IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACK S.,[1]

Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

Defendant.

Case No. 1:19-cv-01160-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Jack S. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court affirms the Commissioner's decision because it is free of legal error and supported by substantial evidence.

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff was born in April 1953, making him sixty years old on June 5, 2013, the alleged disability onset date. (Tr. 64.) Plaintiff completed two years of college and has past work experience as an operating room technician. (Tr. 24, 171.) In his DIB application, Plaintiff

alleges disability due to vertigo, post-concussion syndrome, insomnia, and neck and shoulder issues.[2] (Tr. 64.)

The Commissioner denied Plaintiff's DIB application initially and upon reconsideration, and on May 18, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 15.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on February 26, 2018. (Tr. 33-62.) On May 10, 2018, the ALJ issued a written decision denying Plaintiff's DIB application. (Tr. 15-25.) On June 15, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-2.)

## II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citations omitted). Thus, Plaintiff's date last insured of December 31, 2018 (*see* Tr. 15) reflects the date on which his insured status terminated based on the prior accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before December 31, 2018, he is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-25.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 5, 2013, the alleged disability onset date. (Tr. 17.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "[D]egenerative disc disease of the lumbar spine and post-concussion syndrome[.]" (Tr. 17.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 19.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform a "full range of medium work," subject to these limitations: (1) Plaintiff can "occasionally climb ladders, ropes, and scaffolds," and (2) Plaintiff

needs to "avoid concentrated exposure to hazardous machinery, unprotected heights, and extreme heat." (Tr. 19.) At step four, the ALJ concluded that Plaintiff was not disabled because he retained the RFC to perform his past relevant work as an operating room technician. (Tr. 24-25.)

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to provide: (1) specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony; (2) germane reasons for discounting the lay witness testimony provided by Plaintiff's mother, Emily S.; and (3) specific and legitimate reasons for discounting the opinion of Plaintiff's treating physician, Ramesis Bacolod, M.D. ("Dr. Bacolod"). As explained below, the Court affirms that the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

## I. PLAINTIFF'S SYMPTOM TESTIMONY

### A. Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

**B. Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 23, finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ satisfied that standard here.

**1. Inconsistent Statements**

First, the ALJ discounted Plaintiff's testimony because there were inconsistencies between statements Plaintiff made in support of his DIB application and statements Plaintiff made to his providers. (Tr. 22.) In support of this finding, the ALJ noted that: (1) Plaintiff "told his treating provider that he lives on his parent's farm and 'helps take care of things for them,'" but Plaintiff "denied taking care of anyone" in his function report (Tr. 22, citing Tr. 190 and Tr. 522); and (2) Plaintiff "gave conflicting accounts on how he injured his back" in June 2017 (i.e., Plaintiff "told his treating provider that it happened while he was mowing the lawn, while

he testified that it happened when he was going to check on a stuck deer”). (Tr. 22, citing Tr. 506).

It is well settled that an ALJ may discount a claimant’s testimony based on his inconsistent statements. *See Eblen v. Saul*, 811 F. App’x 417, 420 (9th Cir. 2020) (holding that the ALJ met the clear and convincing reasons standard, stating that the ALJ appropriately discounted the claimant’s testimony based on his inconsistent statements, and noting that there were “inconsistencies between statements [the claimant] made to his providers and statements he made in support of his . . . application”). Substantial evidence (i.e., more than a mere scintilla but less than a preponderance) supports the ALJ’s decision to discount Plaintiff’s testimony on this ground.

Plaintiff acknowledges that he “did make inconsistent statements with regard to how he injured his back on the riding mower.” (Pl.’s Opening Br. at 9.) Plaintiff, however, argues that he “did not make any statements with regard to taking care of his parents,” noting that the ALJ relied on Plaintiff’s report that he lives at “‘his parent’s farm where he helps take care of things for them,’” but he “did not otherwise state that he cares for his parents.” (Pl.’s Opening Br. at 10, citing Tr. 522.) Plaintiff therefore argues that it was inappropriate to discount his testimony based on “[a] single” inconsistent statement. (Pl.’s Opening Br. at 9.)

In *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017), as here, the ALJ discounted the claimant’s testimony based on her inconsistent statements. *Id.* at 906. The ALJ identified only one supporting example: The claimant informed her treating provider that she “does drive,” but the claimant testified at the hearing that she “does not drive because her driver’s license had been suspended in 2003.” *Id.* After recognizing that the ALJ cited “no other alleged inconsistencies in [the claimant’s] testimony,” the Ninth Circuit held that “[a] single discrepancy

fails . . . to justify the wholesale dismissal of a claimant's testimony." *Id.* at 906-07 (quoting *Robbins*, 466 F.3d at 883-84).

In contrast here, the ALJ identified more than one alleged inconsistency. In addition to discounting Plaintiff's testimony based on his inconsistent statements regarding how he injured his back (which Plaintiff acknowledges), the ALJ also pointed to Plaintiff's inconsistent statements about caring for his parents. The Court finds that the ALJ's interpretation of the record was rational. (*Compare* Tr. 522, May 16, 2017, Plaintiff reported that he lives "at his parent's farm where he helps take care of things for them," Tr. 345, August 7, 2013, Plaintiff reported that his shoulder and upper back were sore after replacing a "plumbing valve at home in the ground," *and* Tr. 349, August 12, 2013, Plaintiff reported that his "father need[ed] assistance getting up and down this weekend so [he] helped him," *with* Tr. 190, July 7, 2015, Plaintiff denied "tak[ing] care of anyone else such as . . . parents").

For these reasons, the ALJ did not err in discounting Plaintiff's testimony based on his inconsistent statements. *See Crawford v. Berryhill*, 745 F. App'x 751, 753 (9th Cir. 2018) (rejecting objections to the ALJ's findings because they "amount[ed] to advocating for alternatives to the ALJ's rational interpretation of the record and therefore d[id] not demonstrate error"); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Wilcox ex rel. Wilcox v. Colvin*, No. 13-2201-SI, 2014 WL 6650181, at *5 (D. Or. Nov. 24, 2014) ("Plaintiff's alternative interpretation of the evidence is insufficient to overturn the ALJ's findings.").

**2. Conflicting Medical Evidence**

The ALJ also discounted Plaintiff's testimony on the ground that it was inconsistent with the objective medical evidence. (*See* Tr. 22, finding that Plaintiff's statements are "inconsistent

with . . . the medical evidence"). The Ninth Circuit has held that it is appropriate to discount a claimant's testimony based on inconsistencies with, among other things, "the objective medical evidence[.]" *Eblen*, 811 F. App'x at 420 (citing *Tommasetti*, 533 F.3d at 1039).

Plaintiff argues that the ALJ erred in discounting his testimony based on conflicting medical evidence because the ALJ "did not consider" Plaintiff's videonystagmography ("VNG") "tests that confirmed Plaintiff's post-concussive syndrome" and ignored evidence showing that Plaintiff had "balance and coordination issues." (Pl.'s Opening Br. at 10, 12.) The Court disagrees.

The ALJ found that Plaintiff's post-concussion syndrome was a severe impairment. (Tr. 17.) The ALJ, however, discounted Plaintiff's testimony regarding the severity of his post-concussion syndrome. In doing so, the ALJ described unremarkable imaging and examination results. (Tr. 23.) The ALJ also cited the "Dizziness Medical Source Statement" completed by Plaintiff's treating physician, Dr. Bacolod, who stated that Plaintiff's "several tests including MRI, CT, [and] VNG . . . were negative for objective findings," and that he did "not think [Plaintiff's] symptoms and functional limitations are reasonably consistent." (Tr. 23, citing Tr. 538.)

The record provides support for Plaintiff's post-concussion syndrome diagnosis. (*See* Tr. 426-27, April 24, 2014, Plaintiff's VNG results did not reveal "any problems with the peripheral vestibular system-the semicircular canals in the ears," but did reveal that Plaintiff had a "form of biphasic nystagmus . . . consistent with a central lesion," meaning "dysfunction of the brain or its processing which is consistent with a post-concussive syndrome"). However, it was reasonable for the ALJ to discount Plaintiff's testimony regarding the severity of his post-concussion syndrome based on the objective medical evidence, as well as Dr. Bacolod's (and his

other providers') documented skepticism about the severity of his symptoms. (*See* Tr. 538, February 1, 2018, Dr. Bacolod stated that "Patient has gone through several tests including MRI, CT, [and] VNG . . . and all test reports were negative for objective findings. Bas[ed] on the results, I do not think the patient's symptoms and functional limitations are reasonably consistent."; *see also* Tr. 315, July 5, 2013, Plaintiff's massage therapist noted that Plaintiff has a level of "dizziness that seems extreme for whiplash"; Tr. 289, July 11, 2013, Plaintiff's physician's assistant noted that there was a "discrepancy" between the neck range of motion and discomfort that Plaintiff exhibited in the waiting room compared to the examination room, and Plaintiff stated that he "had no idea why it would be different" and he was "'not trying to fool anybody'"; Tr. 290, July 11, 2013, Plaintiff's provider co-signed a report stating that Plaintiff's "subjective complaints and exam findings DO NOT match up with his affect, range of motion and function while he is observed prior to formal exam when he is in the waiting room," Plaintiff was in "[n]o acute distress when observed prior to exam, smiling, laughing, appear[ing] quite comfortable," and during his exam, Plaintiff "appears to be in significant pain and moderate distress"; Tr. 294, August 8, 2013, Plaintiff's provider noted that he "explained to [Plaintiff] that despite cervical MRI and CT and brain MRI, [he had] not been able to find any objective evidence of abnormality or injury," he "thought [Plaintiff] was 'jumping the gun' in terms of giving up his career" after his rear-end accident, he "personally and professionally think[s] that Plaintiff will most likely overcome his problems from the accident given time and therapy and appropriate consults for additional treatments if needed," and he considered it "a personal decision" to stop working; Tr. 296, "Cervical MRI and CT and brain MRI completed and normal per radiologist"; Tr. 494, May 17, 2017, Plaintiff's MRI and VNG test were "unremarkable"; Tr. 488, September 29, 2016, Dr. Bacolod stated that the etiology of Plaintiff's vertigo was

"unclear"; Tr. 534, October 30, 2017, Plaintiff's imaging was stable, Plaintiff was improving, and Plaintiff could wean off of his back brace and continue "conservative therapies which improve his symptoms including ice, heat, intermittent use of anti-inflammatories, . . . massage, and core strengthening exercises").

**3. Conclusion**

In summary, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony. *See Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's decision to discount the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [the claimant's] testimony as not credible"); *Johaningmeier v. Berryhill*, No. 3:16-cv-2027-AC, 2018 WL 385035, at *6 (D. Or. Jan. 11, 2018) (agreeing with the Commissioner that the ALJ did not commit harmful error in discounting the claimant's testimony because "the ALJ provided at least one other clear and convincing reason").

## II. LAY WITNESS TESTIMONY

### A. Applicable Law

An ALJ "'must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without providing reasons that are "'germane to each witness.'" *Stout*, 454 F.3d at 1056 (citations omitted). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed

treatment." *Barber v. Astrue*, No. 1:10-cv-1432-AWI-SKO, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

**B. Analysis**

Plaintiff argues that the ALJ failed to provide germane reasons for discounting the lay witness testimony provided by Plaintiff's mother, Emily S. Specifically, Plaintiff argues that the ALJ erred by rejecting Emily S.'s testimony based on her relationship with Plaintiff. (Pl.'s Opening Br. at 17.)

The Ninth Circuit's decision in *Jacob v. Berryhill*, 756 F. App'x 709, 712 (9th Cir. 2018), is instructive here. In *Jacob*, the ALJ discounted the claimant's mother's testimony based on her "close relationship" with the claimant and because her "desire to help" the claimant "likely influenced her opinion regarding the claimant's abilities." *Id.* The Ninth Circuit held that the ALJ erred, noting that it has "held that '[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.'" *Id.* (quoting *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017)). However, the Ninth Circuit held that any error in discounting the claimant's mother's testimony was harmless because her testimony "overlap[ped] substantially with that of [the claimant], alleging the same symptoms and limitations," and the reasons the ALJ provided for discounting the claimant's testimony applied with equal force to her mother's testimony. *Id.* at 712-13.

As in *Jacob*, the ALJ erred here by discounting Emily S.'s testimony because she is a family member, but any error was harmless because her testimony overlaps substantially with

Plaintiff's testimony (*compare* Tr. 181-88, *with* Tr. 189-96), and thus the ALJ's reasons for discounting Plaintiff's testimony apply with equal force to Emily S.'s testimony. *See Woodmass v. Berryhill*, 707 F. App'x 432, 436 (9th Cir. 2017) (holding that the ALJ failed to provide germane reasons for discounting the lay witness' statements but finding that the error was harmless because the lay witness' "statements provided essentially the same information as [the claimant's] statements, which the ALJ permissibly discounted"); *see also DeLeon v. Saul*, 812 F. App'x 529, 531 (9th Cir. 2020) (finding that the ALJ's failure to consider lay witness testimony was harmless and noting that the claimant failed to identify testimony from the lay witness that "had not already [been] described").

## III. MEDICAL OPINION EVIDENCE

### A. Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine*, 574 F.3d at 692 (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather

than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996)).

**B. Analysis**

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Bacolod's opinion. The Court disagrees.

Dr. Bacolod complete a Dizziness Medical Source Statement on February 1, 2018. (Tr. 536-39.) Dr. Bacolod stated that Plaintiff has been diagnosed with vertigo and post-concussion syndrome; Plaintiff experiences four to six episodes of dizziness each week, which last between twenty and thirty minutes; Plaintiff would need to take unscheduled work breaks three to four times per day; Plaintiff would miss more than four days of work per month due to his impairments or treatment; and Plaintiff would be off task at least twenty percent of the work day. (Tr. 536-39.) Dr. Bacolod also answered "No" when asked if Plaintiff's "impairments . . . as demonstrated by signs, clinical findings and laboratory or test results [are] reasonably consistent with the symptoms and functional limitations described above in this evaluation." (Tr. 538.) Dr. Bacolod explained that Plaintiff "has gone through several tests including MRI, CT, [and] VNG . . . and all test reports were negative for objective findings," and given these results, he does "not think [that Plaintiff's] symptoms and functional limitations are reasonably consistent." (Tr. 539.)

The ALJ assigned "substantial weight" to Dr. Bacolod's opinion that based on the objective evidence, Plaintiff's symptoms and functional limitations are not "reasonably

consistent." (Tr. 24.) The ALJ, however, discounted the remainder of Dr. Bacolod's opinion because those portions relied heavily on Plaintiff's self-reports "despite physical examinations to the contrary" and "reasons to question the reliability of [Plaintiff's] subjective reporting." (Tr. 24.)

"A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). Plaintiff argues that the ALJ committed harmful legal error in evaluating Dr. Bacolod's opinion because "Dr. Bacolod did not rely more on Plaintiff's self-reports than [his own] clinical observations." (Pl.'s Opening Br. at 15.)

In the Court's view, it was reasonable for the ALJ to conclude that Dr. Bacolod's Dizziness Medical Source Statement was based largely on Plaintiff's self-reports, which the ALJ reasonably discounted. In fact, Dr. Bacolod's own opinion concludes that the objective evidence does not support the symptoms and limitations described "in this evaluation." (Tr. 538.) Thus, it was reasonable for the ALJ to conclude that Dr. Bacolod relied largely on Plaintiff's self-reports. (*Compare* Tr. 536-38, Dr. Bacolod stated that Plaintiff experiences an average of four to six episodes of dizziness per day and would miss more than four days of work per month due to his impairments or treatment, *with* Tr. 39, 43, Plaintiff testified that the "main thing" that is preventing him from working is "dizzy spells" and "vertigo," and estimated that he experiences five to eight episodes of dizziness each week and would miss more than four days of work each month due to these episodes).

///

In summary, the Court concludes that Plaintiff has failed to demonstrate that the ALJ committed harmful error in discounting Dr. Bacolod's opinion. *See* *Brendan J.G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-742-SI, 2018 WL 3090200, at *10 (D. Or. June 20, 2018) ("[B]ecause the ALJ gave at least one specific and legitimate reason for discounting Dr. Richardson's opinion, the Court upholds the decision to do so."); *Hoge v. Berryhill*, No. 16-cv-00718-AC, 2017 WL 4881586, at *9 (D. Or. Oct. 27, 2017) ("[B]ecause the ALJ provided at least one specific and legitimate reason, supported by the evidence, to accord little weight to Dr. Freed's medical opinion, the ALJ did not err in doing so."); *see also* *Samraing K. v. Comm'r of Soc. Sec.*, 18-01110, 2019 WL 4594598, at *2 (W.D. Wash. Sept. 20, 2019) ("The ALJ gave at least one specific and legitimate reason for discounting Dr. Mashburn's opinion and substantial evidence supports that reason; the Court holds that under these circumstances, the ALJ did not err.").

**CONCLUSION**

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 13th day of October, 2020.

HON. STACIE F. BECKERMAN
United States Magistrate Judge